WILKERSON & BOWLES v. J. C. PASS ET ALS., TRADING AS PASS, WOODY & LONG.

(Filed 4 December, 1918.)

1. **Appeal and Error—Evidence—Verdict—Instructions—Trials.**

   Exception that the verdict or instructions to the jury was not supported by the evidence, upon a phase of the controversy upon which the trial had proceeded without objection, comes too late after verdict.

2. **Contracts—Breach—Notice—Buildings.**

   A failure of the owner to give the notice required by a building contract before taking it from his contractor is a breach of the contract; and where the evidence is conflicting, and the jury have found, under a correct charge, that such notice had been given, the verdict upon that phase of the controversy will not be disturbed.

3. **Contracts— Breach— Ability to Perform— Evidence— Rebuttal — Cross-Examination.**

   Where the plaintiff sues for damages for the defendant contractor's breach of a building contract, alleging that he had at all times been ready, with material, workmen, etc., to perform his part, it is competent on his cross-examination for defendant to examine him in relation to a judgment taken against him on a note as tending to disprove his evidence as to his financial condition or ability to complete the contract sued on.

4. **Contracts—Instructions— Buildings— Payments— Conditions— Requested Instructions.**

   Where the owner, under the terms of a building contract, is obligated to pay his contractor 80 per cent of the contract price during the progress of construction, etc., "upon itemized estimates made by the contractor and approved by the architects or superintendents," a request for instruction is properly refused which makes the question of the owner's breach of the contract in this respect to depend upon whether the payments had been made, without reference to the prescribed conditions under which they were to have been done.

5. **Appeal and Error—Instructions—Correct as a Whole—Harmless Error.**

   Where a charge construed as a whole does not prejudice the appellant's rights, error as to fragmentary parts will not be held as reversible.

APPEAL by plaintiff from *Bond, J.,* at April Term, 1918, of DURHAM. This is an action to recover damages for breach of a building contract.

On 9 January, 1917, the plaintiffs entered into a contract with the defendants to rebuild a certain brick store building in the town of Roxboro, which had been destroyed by fire, for which the defendants agreed to pay plaintiffs the sum of $15,700; 80 per cent of the contract price to be paid to the contractors on the work during the progress of its construction and completion, upon itemized estimates made by the contractors and approved by the architects, and the remaining 20 per cent was to be paid to the contractors upon the completion of said building.

The plaintiffs agreed to complete said building within one hundred working days from the date the contract was signed.

Paragraph 11 of the contract is as follows: "Should the contractors become bankrupt, or refuse or neglect to furnish a sufficiency of properly skilled workmen, or of materials of proper quality, and, these facts being certified by the architects in writing, the owners shall be at liberty, after five days written notice, to provide any such labor or materials, and charge same to the contractors, or to employ some other contractors to furnish the necessary materials, and finish said work, at the most reasonable prices obtainable for such work, and to deduct the cost of same from any payments then due or thereafter to become due to the contractors under this contract, and the amount remaining, if such there be, after the completion of the said work, shall be paid to the contractors or their authorized agent."

Purporting to act under the authority contained in paragraph 11 of the contract, and after notice to the plaintiffs, defendants terminated the contract with them and awarded the contract for the completion of said building to Smoot & Sheehan, who completed it at an increased cost to the defendants of more than $8,000. After the termination of the contract by the defendants, the plaintiffs instituted this action to recover damages which they allege they sustained by reason of the alleged wrongful termination of the contract. The defendants set up a counterclaim to recover damages which they allege they sustained by reason of the failure of the plaintiffs to complete their said contract. At the trial of the action the jury answered the issues as follows:

1. Were the plaintiffs, Wilkerson & Bowles, wrongfully prevented completing the building and carrying out their contract by any acts of the defendants? Answer: "No."

2. If so, what damages, if any, did the plaintiffs, Wilkerson & Bowles, sustain? Answer:

3. Did the plaintiffs, Wilkerson & Bowles, wrongfully fail to comply with and carry out their contract concerning the erection of the building? Answer: "Yes."

4. If so, what damages did the defendants, Pass, Woody & Long, sustain thereby? Answer: "$8,000."

Judgment was entered in favor of the defendants, and the plaintiffs appealed.

*Brawley & Gantt for plaintiffs.*
*W. D. Merritt, B. M. Watkins, and Fuller, Reade & Fuller for defendants.*

PER CURIAM. Counsel for the plaintiff earnestly insist before us that there is no evidence that the defendants gave the plaintiffs five days notice of the termination of the contract, but an examination of the record shows that there was no request to so instruct the jury, and no exception or assignment of error presenting the question, and the objection that there is no evidence to support a verdict or finding cannot be taken for the first time after verdict. *S. v. Leak,* 158 N. C., 643; *Moon-Taylor Co. v. Milling Co.,* at this term.

The case was tried upon the theory that there was evidence that the notice had been given, and the court instructed the jury on the question of notice as follows, presenting fully plaintiffs' contention:

"It being admitted by the defendants that the contract was terminated by them on 7 July, 1917, the burden would be on the defendants to satisfy you from the evidence that they had a right to terminate same under the provisions of said contract, and to show further that they have given the plaintiffs the written notice required by the terms of the contract, to wit, five days, and if they have failed to do so, you would answer the first issue 'Yes.' The court charges you that the defendants could not fail and refuse to comply with the provisions of the contract on their part, and later undertake to take advantage of the failure of the plaintiffs to comply with the provisions of the contract on their part and terminate the contract; and if you find these to be the facts, from the evidence and the greater weight thereof, the burden being on the plaintiffs, then you would answer the first issue 'Yes.'

"In any event, the defendants could not terminate the contract without complying with the provisions of paragraph 11 of the contract, in regard to giving the certificate and the five days written notice, and if the defendants terminated the contract without complying with the provisions of the contract, then the court charges you that this would be a wrongful termination of the contract on the part of the defendants, and they would be responsible and answerable to the plaintiffs in damages under the law as to the measure of damages which I have given you."

The first and second exceptions are to permitting the defendants to examine the plaintiff in regard to a note for $1,000 executed by him to the Citizens National Bank of Durham, on which judgment had been obtained.

The plaintiffs alleged and undertook to prove that they had not violated their contract, and that they had at all times a sufficient amount of material of proper quality and a sufficient number of properly skilled workmen to complete the building in the time called for in the contract.

The defendants undertook to show that the plaintiffs had wrongfully failed and refused to complete the building according to the terms of the contract, and that their failure to complete said building was due to the fact that they were financially unable to furnish sufficient material of proper quality and a sufficient number of properly skilled workmen to carry on said work, and the evidence was therefore competent on the question of the ability of the plaintiff to perform his contract.

The plaintiffs requested his Honor to charge the jury as follows, which was refused, and the plaintiffs excepted:

"If the jury should find from the evidence, and from its greater weight, the burden being on the plaintiffs, that the defendants failed to comply with the provisions of paragraph 12 of said written contract and pay the plaintiffs the 80 per cent of the contract price to the contractors or plaintiffs on the work during its progress of construction, and if you should find from the evidence and its greater weight, the burden being on the plaintiffs, that this failure on the part of the defendants to perform the provisions of said contract on their part prevented and delayed plaintiffs from the performance of the provisions of said contract on their part, then and in that event plaintiffs would not be responsible for any such default, and you would answer the first issue 'Yes.'"

It would have been error to refuse this instruction if the defendants had agreed to pay 80 per cent of the contract price during the progress of the work, but this was not the agreement of the parties. The defendants agreed in paragraph 12 to pay 80 per cent of the contract price "during its progress of construction or completion, upon itemized estimates made by the constructors and approved by the architects or superintendents," and there is no evidence that they failed to do so.

The other exceptions are either to the statements of the contentions of the parties, which were made impartially, or to parts of the charge which, when considered in connection with the whole charge, are free from objection.

No error.